# IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF KANSAS

UNITED STATES OF AMERICA *EX REL.* )
MINGE, *et al.*,                    )
                                    )
                    Relators,       )
                                    )
vs.                                 )          Case No. 07-1212-MLB
                                    )
TECT AEROSPACE, INC., *et al.*,     )
                                    )
                                    )
                    Defendants.     )
_____ )

## ORDER ON DEFENDANT'S MOTION TO COMPEL

Before the Court is the Motion to Compel Discovery Responses filed by

Defendant Hawker Beechcraft Corporation. (Doc. 128). While the parties have

resolved some issues originally raised in the motion, disputes remain concerning

the Relators' responses to Defendant's propounded Interrogatories 1 and 2, and

Requests for Production 2, 4, 5 and 6.[1]

_____

[1] This case has a substantial procedural history (see summary in the Scheduling
Order, Doc. 98). Following the District Court's denial of a motion to dismiss and
following the filing of the Fourth Amended Complaint, this Court, following the District
Court's recommendation, limited initial discovery in this case to determining whether
non-conforming parts were in fact present on the aircraft identified in paragraphs 293 and
294 of the Fourth Amended Complaint and the extent of the false statements provided to
the Government at the time of the claims for payment. (Doc. 98).

Relators have brought this case under the False Claims Act (FCA), 31 U.S.C. §§ 3729-33, on behalf of the United States, claiming that Defendants falsely represented that certain aircraft parts were manufactured in accordance with United State's specifications. Relators' theory, explained in their Fourth Amended Complaint (Doc. 80, "the Complaint") and in the current discovery responses, is that the parts at issue (wing spars) were "manufactured using a defective process." They allege that Defendants misrepresented that their manufacturing process would be controlled in a manner to produce repeatable and reliable wing spars. (Doc. 80, ¶2). Relators conclude that because of that process, "no one can be sure whether some or any of the spars conformed to contractually required design specifications and performance standards." (Doc. 80, ¶ 3).

Relators claim that "supplying aircraft with wing spars without the contractually required manufacturing process, quality assurance procedures and testing are *per se* nonconforming even if some of the aircraft . . . have spars with the same basic performance characteristics as those that would have been produced in compliance with the terms of the contract." (Doc. 80, ¶ 4). Relators claim that Defendants "expressly or impliedly certified that, in compliance with the contract documents, drawings, specifications and federal regulations, they had established and used a repeatable manufacturing process designed to assure that . . . wing spars for use on these . . . aircraft were made to the original design data in all respects

and had undergone rigorous testing and quality assurance procedures, even though they knew they had not complied."  (Doc. 80, ¶¶ 62, 73).

The Complaint itemizes various regulatory and contractual certifications which Relators contend constitute or evidence the express or implied certifications of compliance, and establish the requirements for manufacturing processes.  The allegations of deficiencies in the Complaint focus on claims of nonconforming manufacturing processes, and Defendant's claimed knowledge of the process deviations.  The Complaint details some history of parts rejected (usually by Defendant Raytheon) because of defects allegedly caused by the noncompliant manufacturing process.  Relators contend that some parts were accepted by Raytheon and used in aircraft notwithstanding Raytheon's knowledge of either defects, or of the use of a process that resulted in defects.  The Complaint alleges that the techniques used to correct deficiencies were, themselves, nonconforming.  Relators also contend that Defendants misrepresented that they had complied with design specification of particular types of aircraft.  They allege that every aircraft of the named type sold to the United States had wing spars "manufactured using the defective process."

Relators enumerate specific "JPATS T-6A" aircraft which they contend were falsely certified as conforming to the contracts, "without noting that the wing spars were not manufactured in accordance with the original design data and had

not undergone rigorous testing and quality assurance procedures." (Doc. 80, at 293.) Relators list specific "King Air" aircraft which they contend were sold with false certifications "that the wing spars in the aircraft conformed to the contract." (*Id.*, at ¶ 294.)

## DISCUSSION

**A. Interrogatories Nos. 1 and 2**.

    1.    General objections.

Relators' theory is that an improper and inconsistent manufacturing process resulted in uncertainty as to whether any of the wing spars were conforming. They contend that this uncertainty, coupled with certifications in payment documents, created the actionable false claim. Defendant's queries in Interrogatories Nos. 1 and 2, in contrast to Relator's theory but consistent with the Court's direction that discovery focus on non-conforming parts on specific aircraft, ask for descriptions and other information concerning specific serial numbered parts on specific aircraft. In response, Relators have attempted to fit their "round peg" of a theory into the "square hole" of Defendant's queries.

Relators' General Objection 4 complains that Defendant's interrogatories place "the burden on Relators to trace specific serialized parts to every "Aircraft." Subpart (a) of Interrogatory No. 1 does exactly that. Interrogatory No. 1 requires particular information be provided and related to each aircraft alleged in

paragraphs 293 and 294 of the Complaint. Relators claim they do not have the "burden" to prove that level of detail, but may rely on their theory that the nonconformity was an improper and inconsistent manufacturing process that deprived the United States of its entitled certainty that all parts are conforming.

An interrogatory is not objectionable simply because it asks for information which the respondent contends is not part of its case theory. Discovery is proper if directed to a matter relevant to "*any party's* claim or defense." Federal Rule of Civil Procedure 26(b)(1)(emphasis added). Defendant is entitled to conduct discovery to develop facts to develop its defenses regardless of whether Relators consider the facts important to their theory of the case. Whether or not Relators will have the eventual "burden" to prove the level of detail requested in these interrogatories to establish their claim is a question for trial or dispositive motions. General Objection 4 is, therefore, overruled.

Similarly, General Objection 5 objects that the detail requested by the Interrogatory, specifically the request to associate specific serialized parts with specific aircraft, cannot be provided without "extensive discovery." An interrogatory is not objectionable because the respondent does not know the answer. The proper response to such an interrogatory is "I don't know." If discovery reveals the answers, a supplemental answer may be required. Fed.R.Civ.P. 26(e). General Objection 5 is also overruled.

General Objection 1 challenges each question "to the extent that it purports – through definitions or otherwise – to impose burdens on Relators that exceed the scope of reasonable and permissible discovery under the Federal Rules of Civil Procedure." In other words, Relators are objecting to any question that is objectionable. A proper objection to a discovery inquiry should state the specific grounds for the objection. This Wonderland-esque objection fails to do so and is, therefore, overruled. The harm of this sort of objection is that it leaves the proponent unsure if information is being withheld. Such boilerplate objections are useless and should be avoided.

General Objection 2 makes a blanket "over broad and unduly burdensome" objection to any interrogatory containing certain terms that might render the interrogatory an "omnibus" query. The Court discourages the incorporation of a general objection that requires the proponent and, in this case, the Court to apply the particular objection to the various specific interrogatories – a duty properly belonging to the respondent. In the context of this specific interrogatory, however, the objection is appropriate in substance if not in form. The Interrogatory uses the word "describe" in three subparts. Not objectionable in and of itself, the Interrogatories use the following definition of the word "describe":

> '**Explain**' or '**describe**' when used with respect to a fact, event, communication, conversation, process, or allegation means to provide the full and complete details

> concerning such a fact, event, communication,
> conversation, process, or allegation, including but not
> limited to when it occurred, where it occurred, how it
> occurred, the identity of all persons involved, and the
> identity of all documents that reflect, refer, relate to,
> evidence, or pertain in any way to such a fact, event,
> communication, conversation, process, or allegation."

The word, with this definition, does make the question unduly burdensome by requiring the respondent to determine which documents "reflect, refer, relate to, evidence, or pertain in any way" to the response. The objection to this definition in the discovery requests is sustained, and that definition is stricken. Respondent shall respond to the interrogatory within the common English language meaning of the word "describe."

General Objection 3 takes issue with Defendant's definition of the party "TECT," a term used in Interrogatory Number 3. Relator's objection focuses on an explanation of Relators' limited knowledge about who or what might have been affiliated with or acting on behalf of TECT. Not really an objection, the Court reads Relator's response in this regard as a qualification of its responses. To the extent it is intended as an objection, it is overruled.

Confusingly, Relators incorporate General Objection 6, which objects to the extent a question requests information beyond the aircraft specified in ¶¶ 293 and 294 of the Complaint. Because Interrogatory No. 1 is expressly limited to those aircraft, this objection is inapplicable and, in respect to Interrogatory No. 1,

overruled.

2. Specific responses to Interrogatories Nos. 1 and 2.

In Interrogatories Nos. 1 and 2, Defendant asks Relator to specify its claims of nonconformity as to each aircraft identified in paragraphs 293 and 294 of the Complaint. The Interrogatory (*see* Doc. 129-2, at 8) requests descriptions of how each aircraft is nonconforming, and requests details, including identifying information (parts numbers, etc.) for nonconforming parts, how each specific part is nonconforming, each contract or regulatory provision with which the part fails to conform, each individual who has knowledge of the specific nonconformity, documents which document the nonconformity, and when and how Defendants learned of the nonconformity.

Relators response to subpart (a) of Interrogatory No. 1 is insufficient. Although Relators have provided part numbers that relate to each type of aircraft, they have not provided specific serialized parts as to each individual aircraft. The Court infers from the response contained in Relators' objections and memoranda that Relators do not know the answer to this part of the question. Defendant, however, is not required to rely on such an inference; it is entitled to an answer. Relators will either provide the detail requested or clearly state that they do not know the answer.

Assuming that Relators' proper response to part (a) is that they cannot

identify the specific serialized parts for each aircraft because they do not know, their remaining responses will be sufficient with a minor clarification. Their response is that the uncertainty as to *any* of the parts makes *each* part nonconforming. They have identified persons and contract provisions as requested with relate to their contentions concerning the manufacturing process. If however, Relators have the specific information requested, including any knowledge about specific defects in parts in the individual aircraft identified in the Fourth Amended Complaint (beyond their contention of general nonconformity), they will supplement their response to disclose that information. Otherwise, Relators will, as to each subpart of Interrogatories Nos. 1 and 2, confirm that they do not know the requested information relating to each specific part on each specific aircraft.

The portion of Defendant's motion compelling a response to Interrogatories 1 and 2 is **GRANTED in part** and **DENIED in part**. In addition to the supplemental answers required, Relators will state whether or not additional responses are required in light of the Court's disposition of their general objections, discussed above, and, if so, provide such answers.

**B.    Requests for Production**.

The disputes concerning Requests for Production Nos. 2, 4, 5 and 6 involve various types of communications and documents exchanged between Relators and the United States Government ("the Government"). Relators generally object to

the production of certain of these documents as privileged work product.

Defendants contest that categorization of disputed documents and contend that the

communications with the Government effect a waiver of any privilege.  Defendants

argue that the very fact that the requested documents were provided to the

Government by Relators waives any work product claim.  Relators counter that

those communications are protected from waiver by the common interest doctrine

because Relators and the Government are essentially aligned in interest in this

action.

      1.      Work product protection.

Federal Rule of Civil Procedure 26(b)(3) restricts otherwise discoverable

documents prepared "in anticipation of litigation" by or for a party or its

representative.  To overcome the protection the requesting party must show that "it

has a substantial need for the materials to prepare its case and cannot, without

undue hardship, obtained their substantial equivalent by other means."

Fed.R.Civ.P. 26(b)(3)(A).  Even if such documents are ordered produced, the

Court must do so in a way that protects against disclosure of "mental impressions,

conclusions, opinions or legal theories of a party's attorney . . . concerning the

litigation."  Fed.R.Civ.P. 26(b)(3)(B).  While the general protection in part (A) of

the rule protects parties as well as their attorneys, the "opinion" protection in part

(B) only applies to the opinions of a party's representative.  Relators' basic claims

of privilege must be evaluated within these principles.

2.    The common interest doctrine.

The common interest doctrine "affords two parties with a common legal interest a safe harbor where they can openly share privileged information" without risking the waiver of the privilege. *U.S. Fire Ins. Co. v. Bunge N. Am. Inc*., No. 05-2192-JWL-DJW, 2006 WL 3715927, at *1 (D. Kan. Dec. 12 2006) (*citing Sawyer v. Southwest Airlines*, No. 01-2385-KHV, 2002 WL 31928442, at *3 (D. Kan. Dec. 23, 2002)). The doctrine is not a separate privilege, but rather an exception to the waiver of a privilege. *Id*., at *2.

Relators are prosecuting this action on behalf of "themselves and the United States Government." 31 U.S.C. § 3730(b). The Government will receive any damages awarded, less a percentage received by Relators. 31 U.S.C. § 3730(d). Under these circumstances, the parties have a clear common interest, and if the documents were created in anticipation of the *qui tam* litigation and provided to the Government in furtherance of the litigation, the disclosures do not constitute a waiver of either the attorney-client privilege or of any work product protections under Fed.R.Civ.P. 26. *Miller v. Holzmann*, 240 F.R.D. 20 (D.D.C. 2007); *Redacted v. Redacted*, 209 F.R.D. 475 (D. Utah 2001); *Burroughs v. DeNardi Corporation*, 167 F.R.D. 680 (S.D. Calif. 1996). A reason for applying the common interest doctrine is "the congressional desire that the relator apprise the

government of all he or she knows as a condition of bringing a *qui tam* action."

*Miller*, 240 F.R.D. at 23.  Of course, disclosures made for purposes other than promoting the litigation may constitute a waiver.  *In re Aftermarket Filters Antitrust Litigation*, No. 08-C-4883, 2010 WL 4791502 (N.D. Ill. November 18, 2010).

       3.      Request For Production No. 2.

Request for Production No. 2 requests "'disclosure statements' (including any supplements or updates) you provided to the United States pursuant to 37 U.S.C. § 3730(b)(2)."  The cited provision requires a person bringing an action on behalf of the United States serve the Government with "[a] copy of the complaint and written disclosure of substantially all material evidence and information the person possesses."

Relators state that they have provided all documentary evidence included in the disclosure, and in their response to the motion have specified which documents were included.  However, Relators raise a work product objection to producing a summary of the evidence by Relators' counsel which was part of the submission. Relators describe that document as "an attorneys' summary of what the attorney found persuasive or important in the documents."  Although Defendant challenges this description of the withheld portion of the submission as unsupported, neither party has requested this Court conduct an *in camera* inspection of the withheld

document, and the Court declines to do so *sua sponte*. Therefore, Relators'

description of the document is uncontroverted.

The statute requiring the disclosure statement does not provide an inherent

privilege against its disclosure. ***Stone v. Rockwell Int'l. Corp***., 114 F.R.D. 396,

398 (D. Col. 1992). The statute only requires a copy of the complaint (which will

eventually be a public document), and a "a written disclosure" of evidence and

information. Thus, the statute can be fulfilled by a submission of raw evidence,

which is not "prepared in anticipation of litigation" and thus not within the Rule

26(b)(3) definition. If such a disclosure contains no mental impressions,

conclusions, opinions or legal theories of an attorney it will not qualify for work

product protection. However, the disclosure is entitled to protection to the extent it

does contain such impressions, conclusions, opinions or theories. ***Stone v.

Rockwell Int'l Corp***., 114 F.R.D. at 400. *See also*, ***Yannacopoulos v. General

Dynamics**,* 231 F.R.D. 378 (N.D. Ill. 2005) (portions of disclosure statement

containing opinions were not discoverable); ***Bagley v. TRW, Inc.***, 212 F.R.D. 554

(C.D. Cal. 2003) (disclosure statement contained attorney opinion work product);

***Burns v. A.D. Roe Company, Inc***., 904 F. Supp. 592 (W.D. KY 1995) (disclosure

which does not contain attorney opinions but is a mere "conduit" for statement by

Relator is not protected as work product). The written attorney summary in this

case falls within the definition of opinion work product and is, therefore, protected

under Rule 26(b)(3)(B).

Even assuming the summary presented with the evidence should be considered only "fact" work product under Rule 26(b)(3)(A), Defendant has not demonstrated how an attorney-written summary of the evidence provided is critical to their case preparation. They point out that Relators' theory of Defendants' liability has changed during the course of this litigation, but do not establish that further evidence of the changes would be helpful. Provision of this summary to the Government was in furtherance of this litigation, and is thus protected from waiver under the common interest doctrine.

The portion of Defendant's motion to compel relating to the production of the attorney statement which accompanied the section 3730(b)(2) disclosure is **DENIED**.

   4.  Requests for Production Nos. 4, 5, and 6.

Requests for Production Nos. 4, 5, and 6 remain at dispute. The requests seek the following information:

> 4.  Produce all documents or correspondence exchanged between you and the United States concerning your "disclosure statements," to the extent they relate to your allegations regarding the aircraft.

> 5.  Produce all documents you provided to the United States relating to the aircraft.

6.     Produce all documents exchanged between you
       and the United States concerning the aircraft.

It appears from the briefing that Relators have provided the documents described in

these requests, with the exception of "e-mails and communications between

themselves and the Government as the Government has claimed that their

investigation, which was done at the direction of attorneys at the DOJ/USA, is

protected by attorney work product."  Relators have claimed a "common interest"

in that work product as well as their own work product.  The withheld documents

are the subject of a privilege log, which has been provided.

       The Court has concluded that the relationship between Relators and the

Government brings them within the protection of the "common interest doctrine."

This means that privilege and work product protections otherwise applicable to the

documents are not waived by Relators sharing the document with the Government.

However, the common interest doctrine does not create protections, it applies only

to avoid waiver.  It does not, for example, create an attorney-client privilege

between Government counsel and Relators.

       The doctrine does not empower Relators to assert protections on behalf of

the Government.  While the Government and Relators have a common interest in

this case, they are not the same party.  Realtors have not cited any case law, and the

Court has found none, to support a proposition that the common interest doctrine

permits one party to assert a privilege or protection on behalf of the other. The United States remains a represented party in this case, and is capable of protecting its interests. To the extent that Relators have asserted objections on behalf of the Government, those objections are overruled.[2]

When asserting a privilege the Relators were required to submit a privilege log with information sufficient to "enable other parties to assess" the claim of privilege. Rule 26(5)(A)(ii). The privilege log in this case is somewhat lacking in certain instances. For example, e-mail communications are described, in part, by stating the last name of the recipient and sender. While the Court certainly recognizes the names of the Relators and their attorneys of record, and the name of Mr. Boyll (one of the Department of Defense attorneys in this case), some names appearing on those submission are unfamiliar. This includes names on the "copied to" lines of the messages. If those persons are not a party to the action, or a representative thereof, they are outside the common interest doctrine protection, and sharing the document with such persons waives the protection. The Court is not required to mine the record in hopes of determining the identity of those parties.

Communications from the individual Relators (as opposed to their attorneys)

---

[2] In some situations, communications between the Government and Relators may be protected if that protection is asserted in the case by the Government. *See **Redacted v. Redacted**, 209 F.R.D. 475 (D. Utah 2001).

are not entitled to the heightened protection of Rule 26(b)(3)(B), which only applies to their attorneys. The privilege log disclosures relating to messages from Mr. Minge and Mr. Kiehl are not described sufficiently for the Court to find that the content of those messages constitutes work product within the meaning of Rule 26(b)(3)(A). However, even assuming they do, those individuals will be critical witnesses in this case, and the Court finds that prior statements to the Government by Mr. Minge and Mr. Kiehl are evidence for which the defense has a substantial need and which cannot be obtained by other sources.

The following paragraphs summarize the Court's rulings on the categories of documents which are described in the privilege log beginning at page 6. The footnotes to each paragraph list the documents the Court believes are covered by the ruling. However, if documents are incorrectly listed, the categorical rulings control over the footnote listings. For example, the Court guesses that several documents listed in relation to paragraph 4 actually belong in paragraphs 3 or 5. This re-categorization, however, would not change the outcome.

1.     Communications from the Relators to their attorneys are protected by the attorney client privilege. This privilege is not waived by copying the communications to attorneys or agents for the Government. The

motion to compel production of these documents is **DENIED**.[3]

2.      Communications from the Relators' attorneys to and from

Government attorneys and representatives and witnesses are generally

protected by Rule 26(b)(3)(A) and (B). This protection is not waived

by copying the communications to the individual Relators.  The

motion to compel production of these documents is **DENIED**.  To the

extent specific witnesses become relevant to a stage of the proceeding,

the Court may reconsider whether specific communications from the

witness to counsel are protected work product.[4]

---

[3] MK006593-MK006594, MK006723, MK006811-MK006813, MK006912-MK006980, MK006996-MK006997 (portion of e-mail from attorney Jeff Spahn), MK006998 (portion of e-mail from Connie Johnson), MK007001-MK007002, MK007004, MK007023, MK007032-MK007045, MK007046-MK007047, MK007058, MK007059-MK007062, MK007067, MK007068-MK007079, MK007460-MK007462, MK007463-MK007474, MK007465, MK007466-MK007473, MK007474-MK007475, MK007476-MK007482, MK007483, MK007484, MK007485, MK0076486-MK007492, MK007493, MK007499, MK007500-MK007505, MK007506-MK007508, MK007513-MK007555, MK007557-MK007578, MK016685-MK16689-MK016691.

[4] MK007080, MK007081, MK007082, MK007083, MK007084, MK007085, MK007086, MK007087-MK007097, MK007098-MK007176, MK007177, MK007199, MK007200-MK007212, MK007213, MK007214-MK007215, MK007216-MK007220, MK007221-MK007226, MK007227, MK007228-MK007231, MK007232, MK007233, MK007234, MK007235-MK007236, MK007237, MK007238-MK007239, MK007285-MK007289, MK007290-MK007295, MK007296, MK007298-MK007360, MK007307-MK007308, MK007309-MK007310, MK007311-MK007312, MK007313-MK007314, MK007315, MK0073160MK007317, MK007318-MK007320, MK007321, MK007321, MK007322-MK007334, MK007335, MK007336, MK007337, MK007338-MK007351, MK007352-MK007376, MK007377-MK007401, MK007402-MK007416, MK007417-MK007424, MK007425-MK007430, MK007431-MK007438, MK007431-MK007438, MK007439-MK007446, MK007447-MK007448, MK007449, MK007454-MK007455.

3. Communications from the individual Relators to Government agents or attorneys are not shown to be within the protection of Rule 26(b)(3)(A). Even if they are, Defendant has a substantial need for these documents. The motion to compel production of these documents is **GRANTED**.[5]

4. Communications to or from, or copied to, persons who are not the Relators, their attorneys, or Government representatives, are not entitled to any protection. The motion to compel production of these documents is **GRANTED**.[6]

_____

[5] MK006570.

[6] MK006570, MK006571, MK006572, MK006573, MK006574, MK006575, MK006577, MK006578, MK006579, MK006580, MK006581- MK006587, MK006588, MK006589, MK006590, MK006591, MK006592, MK006594 (redacting communications between Tibbits and Kiehl), MK006595, MK006596-MK006604, MK006605, MK006606-MK006608, MK006609-MK006611, MK006612-MK006613, MK006614-MK006617, MK006618-MK006619, MK006620-MK006623, MK006624, MK006625-MK006626, MK006627-MK006629, MK006630-MK006631, MK006632-MK006638, MK006639-MK006640, MK006641, MK006642-MK006644, MK006645-MK006646, MK006647-MK006649, MK006650-MK006651, MK006652, MK006653, MK006654-MK006656, MK006657-MK006658, MK006659-MK006662, MK006663-MK006664, MK006665-MK006668, MK006669-MK006671, MK006672-MK006675, MK006676, MK006677-MK006678, MK006679, MK006680-MK006681, MK006682-MK006683, MK006684, MK006685, MK006686, MK006687, MK006688, MK006689-MK006691, MK006692-MK006693, MK006694-MK006685, MK006696, MK006697-MK006699, MK006700, MK006701-MK006702, MK006703, MK006704-MK006707, MK006708, MK006709, MK006710, MK006711, MK006712, MK006713-MK006714, MK006715-MK006718, MK006719-MK006722, MK006724, MK006725-MK006728, MK006729-MK006731, MK006732, MK006733-MK006735, MK006736-MK006738, MK006739, MK006740-MK006742, MK006743-MK006748, MK006749, MK006750,

5. Communications from Government agents and representatives to the individual Relators (or to each other) are not within the protection of Rule 26(b)(3), at least as to the Relators. The Relators do not have standing to assert those protections on behalf of the Government. The motion to compel production of those documents is **GRANTED**. *See* note 2.

Defendant's motion to compel is, therefore, **GRANTED in part** and **DENIED in part** as set forth above. Relators will provided the supplemental responses required by this ruling on or before **May 29, 2011**.

**IT IS THEREFORE ORDERED** that Defendant's Motion to Compel Discovery Responses (Doc. 128) is **GRANTED in part** and **DENIED in part** as

---

MK006751, MK006752, MK006753, MK006754-MK006755, MK006756, MK006757-MK006758, MK006759-MK006760, MK006761-MK006763, MK006764, MK006765, MK006768, MK006768, MK006769-MK006770, MK006771-MK006773, MK006774, MK006775-MK006776, MK006777-MK006778, MK006779, MK006780-MK006782, MK006783-MK006784, MK006785-MK006788, MK006789, MK006793, MK006794-MK006797, MK006798, MK006799-MK006800, MK006801, MK006802-MK006803, MK006804-MK006805, MK006806-MK006809, MK006810, MK006814-MK006815, MK006816-MK006819, MK006820-MK006849, MK006850, MK006851, MK006911, MK006981-MK006992, MK006993, MK006994, MK006995, MK006996-MK006997 except for e-mail from attorney Jeff Spahn), MK006990 (except portion that is message from Connie Johnson), MK006999, MK007000, MK007003, MK007005-MK007018, MK007019, MK007020, MK007021-MK007022, MK007048, MK007049, MK007051, MK007052-MK007054, MK007055, MK007056, MK007057, MK007240-MK007283, MK007284, MK007297,

more fully set forth above.

**IT IS SO ORDERED.**

Dated at Wichita, Kansas, on this 18th day of May, 2011.

                                          s/ KENNETH G. GALE
                                         KENNETH G. GALE
                                         United States Magistrate Judge