# IN THE UNITED STATES DISTRICT COURT
# DISTRICT OF KANSAS

| | |
|---|---|
| UNITED STATES OF AMERICA *EX REL.* MINGE, *et al.*, | ) ) ) |
| Relators, | ) ) |
| vs. | ) ) Case No. 07-1212-MLB |
| TECT AEROSPACE, INC., *et al.*, | ) ) ) |
| Defendants. | ) ) |

## ORDER ON DEFENDANT'S MOTION TO COMPEL SUPPLEMENTAL INTERROGATORY RESPONSES

Before the Court is the Motion to Compel Supplemental Interrogatory Responses filed by Defendant Hawker Beechcraft Corporation. (Doc. 168). The underlying issues were addressed in Defendant's prior Motion to Compel (Doc. 128) and ruled upon in the Court's corresponding Order (Doc. 154, incorporated herein by reference). Even so, a dispute remains concerning whether Relators's supplemental responses to Interrogatories Nos. 1 and 2 complied with the parameters of the Court's previous Order.

## BACKGROUND

As discussed in the Court's prior Order, Relators have brought this case

under the False Claims Act (FCA), 31 U.S.C. §§ 3729-33, on behalf of the United States, claiming that Defendants falsely represented that certain aircraft parts were manufactured in accordance with United State's specifications. Relators' theory, explained in their Fourth Amended Complaint (Doc. 80, "the Complaint") and in the current discovery responses, is that the parts at issue (wing spars) were "manufactured using a defective process." They allege that Defendants misrepresented that their manufacturing process would be controlled in a manner to produce repeatable and reliable wing spars. (Doc. 80, ¶2). Relators conclude that because of that process, "no one can be sure whether some or any of the spars conformed to contractually required design specifications and performance standards." (Doc. 80, ¶ 3).

Relators claim that "supplying aircraft with wing spars without the contractually required manufacturing process, quality assurance procedures and testing are *per se* nonconforming even if some of the aircraft . . . have spars with the same basic performance characteristics as those that would have been produced in compliance with the terms of the contract." (Doc. 80, ¶ 4). Relators claim that Defendants "expressly or impliedly certified that, in compliance with the contract documents, drawings, specifications and federal regulations, they had established and used a repeatable manufacturing process designed to assure that . . . wing spars for use on these . . . aircraft were made to the original design data in all respects

and had undergone rigorous testing and quality assurance procedures, even though they knew they had not complied." (Doc. 80, ¶¶ 62, 73).

The Complaint itemizes various regulatory and contractual certifications which Relators contend constitute or evidence the express or implied certifications of compliance, and establish the requirements for manufacturing processes. The allegations of deficiencies in the Complaint focus on claims of nonconforming manufacturing processes, and Defendant's claimed knowledge of the process deviations. The Complaint details some history of parts rejected (usually by Defendant Raytheon) because of defects allegedly caused by the noncompliant manufacturing process. Relators contend that some parts were accepted by Raytheon and used in aircraft notwithstanding Raytheon's knowledge of either defects, or of the use of a process that resulted in defects. The Complaint alleges that the techniques used to correct deficiencies were, themselves, nonconforming. Relators also contend that Defendants misrepresented that they had complied with design specification of particular types of aircraft. They allege that every aircraft of the named type sold to the United States had wing spars "manufactured using the defective process."

Relators enumerate specific "JPATS T-6A" aircraft which they contend were falsely certified as conforming to the contracts, "without noting that the wing spars were not manufactured in accordance with the original design data and had

not undergone rigorous testing and quality assurance procedures." (Doc. 80, at 293.) Relators list specific "King Air" aircraft which they contend were sold with false certifications "that the wing spars in the aircraft conformed to the contract." (*Id*., at ¶ 294.)

Interrogatory No. 1 states the following:

> With respect to each aircraft identified by aircraft serial number in paragraphs 293 and 294 of the Fourth Amended Complaint, specify the manner in which that aircraft is alleged to be 'not manufactured in accordance wi th the original design data' and lacking in 'rigorous testing and quality assurance procedures' (Dkt. 80, at 109 ¶293) or is otherwise alleged to be 'nonconforming.' In your response for each allegedly 'nonconforming' aircraft,
>
> (a) identify the specific part number(s), serial number(s), and all other identifying information of each spar, spar cap, spar assembly, and any other component alleged to be nonconforming;
> (b) describe in detail the manner in which each particular spar, spar cap, spar assembly, and other component is nonconforming, including (but not limited to) all allegations regarding 'hot forming 2024-T3 material' (Dkt. 80, at 58) and 'cold forming techniques, including 'bashing' (Dkt. 80, at 64);
> (c) identify each specification, design, drawing, contract, and regulation that each identified part does not conform to and describe how each identified part does not conform to the particular specification, design, drawing, contract, or regulation;

    (d) identify each individual who has personal knowledge of each specific alleged nonconformity;

    (e) identify all photographs, videos, and any other media or documents showing or otherwise documenting each specific nonconformance of each part; and

    (f) describe when and how (if at all) any HBC and TECT personnel learned of each alleged nonconformity for each particular part.

 Interrogatory No. 2 states:

> With respect to each aircraft identified within paragraphs 293 and 294 of the Fourth Amended Complaint and in your response to Interrogatory No. 1, identify each voucher, invoice, or other document that you contend was a 'false or fraudulent claim' that Defendant HBC knowingly presented, or caused to be presented, to the United States for payment or approval and identify each record, statement, certification, or other document that you contend was a 'false record or statement' that Defendant HBC knowingly made, used, or caused to be made or used to get that allegedly false or fraudulent claim paid or approved by the United States. (Dkt. 80, at 108-09 ¶292.) With respect to each document identified in response to this interrogatory:
>
>   (a) specify each line item and other portion that is allegedly false or fraudulent;
>
>   (b) identify each HBC personnel (if any) who knew that the document contained a false or fraudulent statement or claim; and
>
>   (c) identify each TECT personnel (if any) who had knowledge of the false or fraudulent statement or claim.

(Doc. 169-1, at 12.)

## **DISCUSSION**

As mentioned above, the parties disagree as to whether Plaintiff's supplemental responses to Interrogatories Nos. 1 and 2 comply with the Court's prior Order (Doc. 154). In that Order, which granted in part and denied in part Defendant's Motion to Compel, the Court held:

> Relators response to subpart (a) of Interrogatory No. 1 is insufficient. Although Relators have provided part numbers that relate to each type of aircraft, they have not provided specific serialized parts as to each individual aircraft. The Court infers from the response contained in Relators' objections and memoranda that Relators do not know the answer to this part of the question. Defendant, however, is not required to rely on such an inference; it is entitled to an answer. Relators will either provide the detail requested or clearly state that they do not know the answer.
>
> Assuming that Relators' proper response to part (a) is that they cannot identify the specific serialized parts for each aircraft because they do not know, their remaining responses will be sufficient with a minor clarification. Their response is that the uncertainty as to *any* of the parts makes *each* part nonconforming. They have identified persons and contract provisions as requested with relate to their contentions concerning the manufacturing process. If however, Relators have the specific information requested, including any knowledge about specific defects in parts in the individual aircraft identified in the Fourth Amended Complaint (beyond their contention of general nonconformity), they will supplement their response to disclose that information. Otherwise, Relators will, as to each subpart of Interrogatories Nos. 1 and 2, confirm that they do not know the requested information relating to each specific

>part on each specific aircraft.

(Doc. 154, at 8-9.)

Defendant now moves to compel further supplementation of Relators' responses to Interrogatories Nos. 1 and 2, arguing that the current responses

>are inadequate because Relators have not followed the Court's Order requiring Relators to 'either provide the detail requested or clearly state they do not know the answer.' Relators still have not confirmed that they do not have information showing any of the specific spar caps at issue are nonconforming, yet they do not answer the interrogatory subparts that seek additional information pertaining to each allegedly nonconforming spar cap.

(Doc. 169, at 3; *see also* Doc. 169-1, at 4-9.) Relators respond that they have complied with the Court's Order because

>at this time, Relators are without sufficient information to form a belief as to whether any of the spar caps on each fo the 41 exemplar aircraft are in a defective condition unreasonably dangerous so as to pose a risk to the safety of flight or that the effects of the processes have diminished the contracted for useful life of the spar caps on each of those aircraft.

(Doc. 181, sealed, at 3.)

The Court has reviewed Relators' responses (*see generally,* Doc. 169-1) and does not agree with Defendants' position that they are inadequate. To the contrary, Relators have stated what they think the defects are, explained why they think the parts are non-conforming, and have specifically referred to numerous "Quality

Notifications," which are offered as evidence "that some of the spar caps on some of the aircraft in question have documented witness marks such as dents, gouges, missing material, excessive material and misformed areas."  (Doc. 181, sealed, at 8.)

In the Court's opinion, Plaintiff's supplemental responses comply with the spirit of the Court's prior Order.  The Court sees no detriment to Defendant by the way Relators have chosen to respond.  Should Defendant feel additional information is needed from Relators, the most recent Scheduling Order has provided them with the opportunity to serve an additional 25 interrogatories.  (*See* Doc. 202, at 4.)

**IT IS THEREFORE ORDERED** that Defendant's Motion to Compel Supplemental Interrogatory Responses (Doc. 168) is **DENIED**.

**IT IS SO ORDERED.**

Dated at Wichita, Kansas, on this 18th day of November, 2011.

        S/KENNETH G. GALE
        KENNETH G. GALE
        United States Magistrate Judge