# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA *EX REL.* )
MINGE, *et al.*,                    )
                                    )
                    Relators,       )
                                    )
vs.                                 )        Case No. 07-1212-MLB
                                    )
TECT AEROSPACE, INC., *et al.*,     )
                                    )
                                    )
                    Defendants.     )
_____ )

## MEMORANDUM AND ORDER ON
## <u>MULTIPLE MOTIONS OF THE PARTIES</u>

Before the Court are the following various motions filed by the parties in the

above-captioned matter:

1.  "Joint Motion for Protective Order" (Doc. 220)
    filed by Defendants Turbine Engine Components
    Technologies Corp., TECT Aerospace, Inc., TECT
    Aerospace Wellington, Inc., and Hawker
    Beechcraft Corporation;

2.  "Motion to Compel the Production of Documents"
    (Doc. 244) filed by Defendant Hawker Beechcraft
    Corporation;

3.  "Motion for Sanctions" (Doc. 246) filed by
    Defendant Hawker Beechcraft Corporation;

4.  "Motion for Sanctions Against Relators For
    Failing to Provide Court-Ordered Discovery"
    (Doc. 257, sealed) filed by Defendant Hawker

Beechcraft Corporation;

5.   "Motion to Quash the Subpoena Issued to Engineering Systems, Inc." (Doc. 300) filed by Defendants Turbine Engine Components Technologies Corp., TECT Aerospace, Inc., TECT Aerospace Wellington, Inc.; and

6.   "Motion to Compel Interrogatory Responses" (Doc. 320) filed by Defendant Hawker Beechcraft Corporation.

Each of the motions is ripe for the Court's decision.  Each will be addressed in turn.[1]

## BACKGROUND

Relators bring this *qui tam* action under the False Claims Act,  31 U.S.C. § 3730(b).  They have also alleged a claim of retaliatory discharge from employment under 21 U.S.C. § 3730(h).

After Relators filed a Third Amended Complaint (Doc. 18), Defendants filed motions to dismiss (Docs. 36, 38).  The District Judge notified the parties of his intent to view those motions as motions for summary judgment under Rule 56, and

---

[1]  Also pending is the "Motion to Compel Responses to Relators' Third Requests for Production to HBC and Second Requests for Production to TECT Defendants" (Doc. 264, sealed), "Relators' Motion for an Order Compelling Hawker Beechcraft Corporation to Produce Documents and for an Order Extending the Period for Discovery" (Doc. 333, sealed), "Defendants Turbine Engine Components Technologies Corp, TECT Aerospace, Inc., and TECT Aerospace Wellington, Inc.'s Motion to Compel Interrogatory Responses" (Doc. 343), and "Defendant Hawker Beechcraft Corporation's Motion to Compel Interrogatory Responses" (Doc. 345).  These motions will be addressed in separate Order(s) from this Court.

then issued a Memorandum and Order denying Defendants' motions as to the retaliation claim, but dismissing the *qui tam* claims on the grounds that Relators had not plead fraud with the particularity required under Rule 9(b). The Court ruled that the Third Amended Complaint failed to specify whether any aircraft were equipped with the allegedly defective parts and, if so, which parts and which planes. The Court also found that the complaint failed to adequately plead false claims for payment. (Doc. 65, pages 19, 22).

Thereafter, Relators filed a motion to file a Fourth Amended Complaint (Doc. 69). The proposed amendments included allegations concerning specific aircraft (paragraphs 293 and 294 of the Fourth Amended Complaint, referred to here as "exemplar" aircraft) which relators contend were manufactured and sold to the government with defects and false representations. The Court allowed the amendment over Defendants' objections (Doc. 79) and ruled that the additional information provided in the information cured the previous Rule 9(b) deficiencies.

In granting the motion the District Judge provided the following guidance to the parties and the Magistrate Judge concerning the management of this case:

> The court recommends that discovery be initially limited in this case to determining whether non-conforming parts were in fact present on the planes identified in the fourth amended complaint and the extent of the false statements provided to the government at the time of the claim for payment. At the close of the initial discovery period, defendants may file a motion for summary judgment, if

one is appropriate at that time.

(Doc. 79, at 5.)

This Court interprets the purpose of the District Judge's recommendation as a "litmus test" for Relators' theories, intended to allow the parties to conduct discovery limited to determine whether Relators can support their claims as to the exemplar aircraft sufficient to survive a summary judgment challenge.  The intent of this initial procedure is to require Relators to establish their basic claims concerning the exemplar aircraft before allowing the more extensive discovery which may be required to prove their broader claims.  By recommending limited discovery in this initial phase, and by providing Defendants an earlier opportunity to file a dispositive motion, the District Judge intended to require Relators, whose claims had been resuscitated only by the fourth amendment to the complaint, to establish that the parts installed on the exemplar aircraft were defective, before allowing broader discovery and litigation covering the entire manufacturing program.

This period of limited discovery was recommended by the District Judge, and constructed by the Magistrate Judge, to be limited in scope and time.  Before allowing this complex and far-reaching case to expand into general discovery, the parties were to be allowed limited discovery and an early dispositive motion

opportunity to test the specifically-plead claims. This was designed to avoid broad-reaching discovery into the program if the Realtors are unable to support their allegations concerning the exemplar aircraft.

This Court has generously interpreted the recommended discovery limitation, allowing an expanded inquiry into areas beyond, but related to, the claims concerning the exemplar aircraft. The Court has extended the period of initial discovery at least twice at Relators' request over Defendants' objections. The Court recently declined to extend the deadline again, allowing only such time as is needed to implement Orders on pending motions. (Doc. 330.) Even so, as mentioned *supra*, Relators have requested yet *another* extension of discovery deadlines. (*See* n.1, *supra*; *see also* Doc. 333.)

This Court remains concerned and disappointed that, despite the procedure devised by the District Court to streamline the case, the parties' approach to discovery has unnecessarily complicated matters. Throughout the period of initial discovery, through the discovery and motions process, the Defendants have maneuvered to limit, and the Relators to expand, discovery based on competing interpretations of the discovery limitation recommended by the District Judge and applied by this Court. This has resulted in a plethora of discovery disputes. Since the entry of the first Scheduling Order (Doc. 98) more than 17 months ago, this Court has issued rulings on seven discovery motions filed by the parties (Docs.

154, 172, 175, 189, 203, 219; 11/3/11 oral motion).  These disputes have, no doubt,

hampered the progress of discovery.  In addition, there are at least ten other

discovery motions currently pending before the Court, including the six addressed

in this Order.  *See, supra.*

Additional details regarding the extensive procedural background of this

case were recently summarized in this Court's April 3, 2012, Memorandum and

Order (Doc. 330) granting in part and denying in part Relators' Motion to Amend

Scheduling Order.  That summary is incorporated herein by reference.  Any

additional facts necessary to the determination of the various motions will be

discussed in the context of the particular motion, *infra*.

**A.    General Provisions on Discovery.**

Fed.R.Civ.P. 26(b) states that "[p]arties may obtain discovery regarding any

matter, not privileged, that is relevant to the claim or defense of any party . . .

Relevant information need not be admissible at the trial if the discovery appears

reasonably calculated to lead to the discovery of admissible evidence."  As such,

the requested information must be both nonprivileged and relevant to be

discoverable.

"'Discovery relevance is minimal relevance,' which means it is possible and

reasonably calculated that the request will lead to the discovery of admissible

evidence."  ***Teichgraeber v. Memorial Union Corp. of Emporia State University***,

932 F.Supp. 1263, 1265 (D. Kan. 1996) (internal citation omitted).  "Relevance is

broadly construed at the discovery stage of the litigation and a request for

discovery should be considered relevant if there is any possibility the information

sought may be relevant to the subject matter of the action."  ***Smith v. MCI***

***Telecommunications Corp.***, 137 F.R.D. 25, 27 (D.Kan.1991).  Stated another way,

"discovery should ordinarily be allowed unless it is clear that the information

sought can have no possible bearing on the subject matter of the action."  ***Snowden***

***By and Through Victor v. Connaught Lab.***, 137 F.R.D. 325, 341 (D.Kan.1991),

appeal denied, 1991 WL 60514 (D.Kan. Mar. 29, 1991).

Discovery requests must be relevant on their face.  ***Williams v. Bd. of***

***County Comm'rs***, 192 F.R.D. 698, 705 (D. Kan. 2000).  Once this low burden of

relevance is established, the legal burden regarding the defense of a motion to

compel resides with the party opposing the discovery request.  *See **Swackhammer***

***v. Sprint Corp. PCS***, 225 F.R.D. 658, 661, 662, 666 (D. Kan. 2004) (stating that

the party resisting a discovery request based on overbreadth, vagueness, ambiguity,

or undue burden/expense objections bears the burden to support the objections).

Although the scope of discovery is broad, it is not unlimited.  If the

proponent has failed to specify how the information is relevant, the Court will not

require the respondent to produce the evidence.  ***Gheesling v. Chater***, 162 F.R.D.

649 (D.Kan.1995).  Even so, courts look "with disfavor on conclusory or

boilerplate objections that discovery requests are irrelevant, immaterial, unduly

burdensome, or overly broad." *Id.*, 650. "Unless a request is overly broad,

irrelevant, or unduly burdensome on its face, the party asserting the objection has

the duty to support its objections." ***Sonnino v. University of Kansas Hosp.***

***Authority***, 221 F.R.D. 661, n. 36 (D.Kan.2004) (citing ***Hammond v. Lowe's Home***

***Ctrs., Inc***., 216 F.R.D. 666, 670 (D.Kan. 2003)); ***Cont'l Ill. Nat'l Bank & Trust***

***Co. of Chicago v. Caton***, 136 F.R.D. 682, 685 (D. Kan. 1991) (stating that a party

resisting a discovery request based on relevancy grounds bears the burden of

explaining how "each discovery request is irrelevant, not reasonably calculated to

the discovery of admissible evidence, or burdensome"). Thus, "the objecting party

must specifically show in its response to the motion to compel, despite the broad

and liberal construction afforded by the federal discovery rules, how each request

for production or interrogatory is objectionable." ***Sonnino***, 221 F.R.D. at 670–71

(internal citation omitted).

**B.     "Joint Motion for Protective Order" (Doc. 220)**.

Defendants Turbine Engine Components Technologies Corp., TECT

Aerospace, Inc., TECT Aerospace Wellington, Inc., and Hawker Beechcraft

Corporation bring this motion before the Court seeking a protective order "to

protect Defendants from the undue burden and expense of responding to Relators'

First Request for Admissions and Second Request for Admissions, which total a

combined 2826 requests." (Doc. 221, at 1.)

Fed.R.Civ.P. 26(c) provides that a party from whom discovery is sought may move for a protective order to "protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense ..." After determining the relevance of discovery at issue, a court "must balance the need for the information against the claim of injury resulting from disclosure." *Johnson ex rel. Johnson v. Olathe District Schools*, 212 F.R.D. 582 (D.Kan.2003). In doing so, a court must "consider whether 'the burden or expense of the proposed discovery outweighs its likely benefit,' pursuant to Rule 26(b)(2)(C)(iii)." *In re Urethane Antitrust Litigation*, MDL No. 1616, 2011 WL 1327988, at *7 (D. Kan. April 5, 2011).

Defendants argue that the requests at issue "are excessive and of marginal relevance and little to no apparent materiality." (Doc. 221, at 4.) This Court has previously stated that once the party opposing the discovery admits its "'marginal' relevance," that party then has the burden to support its objections. *Seed Research Equip. Sol., LLC v. Gary W. Clem, Inc.*, No. 09-1282-EFM-KGG, 2011 WL 1743232, at *1 (D.Kan. May 6, 2011) (*citing McDonald v. Kellogg Co.*, No. 08-2473-JWL, 2011 WL 484191, at *2 (D. Kan. Feb. 7, 2011); *Design Basics, L.L.C. v. Strawn*, 271 F.R.D. 513 (D. Kan. 2010)).

Relators argue that Defendants have not adequately supported the objections. (Doc. 222, at 7-8.) Defendants have grouped Relators requests into

four categories, which Defendants claim "demonstrate[s] the factual minutiae about which Relators seek admissions." (Doc. 221, at 4.)  The categories of admissions relate to 1) parts not installed on the aircraft at issue, 2) job quantities or shipped quantities, 3) actions taken at individual operations of jobs, and 4) direct quotes from documents.  (*Id.*, at 5.)

Relators argue that merely because the requests "have been divided . . . into bite-sized pieces of information does not mean that what they have asked about is minutiae." (Doc. 222, at 7.)  They also contend that Defendants have "inaccurately and very generally without explanation" branded the requests as "factual minutiae." (*Id.*)

In the Court's purview, Defendants have failed to explain how or why something characterized as minutiae is necessarily irrelevant or non-discoverable. This Court anticipates that in a lawsuit involving an alleged conspiracy regarding aircraft equipped with allegedly defective parts, there would be an abundance of factual minutiae that would be not only relevant, but specifically material to Relators' claims.

It is well-established in this district that the party opposing discovery "must specifically show . . . , despite the broad and liberal construction afforded by the federal discovery rules, how each [discovery] request . . . is objectionable." *Sonnino*, 221 F.R.D. at 670–71 (internal citation omitted).  Defendants reference

to thousands of requests for admissions they merely group into 4 general categories of information – which they then label "marginally relevant" minutiae – does not even approach meeting this burden.  Further, it is not in the Court's province to *sua sponte* review all of the individual requests generally referenced in Defendant's brief to determine whether each one is in fact objectionable.  Simply stated, Defendants have not met their substantive burden in opposing the discovery at issue.

As mentioned above, Defendants also generally complain about the sheer number of requests for admissions at issue.  The parties are painfully aware that this case is very complicated and fact intensive.  In fact, that is a large part of the District Court's justification for an initial phase of limited discovery.  The number of requests alone, however, does not establish that each specific request is objectionable.

> Neither the Federal Rules of Civil Procedure, nor the local rules for the District of Kansas, sets a presumptive limit on the number of requests for admission that may be propounded by a party.  While Rule 33(a)(1) sets a limit on the number of interrogatories a party may serve, Rule 36 places no limit on the number of requests for admission a party may serve.  Fed.R.Civ.P. 26(b)(2)(A), however, specifically grants the court the authority to 'limit the number of requests [for admission] under Rule 36.'

*Layne Christensen Co. v. Purolite Co*., Case No. 09-2381-JWL-GLR, 2011 WL

381611, at *4 (D.Kan. Jan. 25, 2011) (citations omitted).  Defendants have failed

to establish that the number of requests for admissions submitted is, on its face,

substantively objectionable given the complexity of this case.  Defendants' motion

for a protective order is, therefore, **DENIED**.  Defendants shall respond to the

requests within **forty-five (45) days** of the date of this Order.

**C.    "Motion to Compel the Production of Documents" (Doc. 244).**

The Court next considers the "Motion to Compel the Production of

Documents" filed by Defendant Hawker Beechcraft.  (Doc. 244.)  Therein,

Defendant HBC contends that Relators incorrectly withheld production of a series

of communications between the individual Relators and an agent for the federal

government based on claims of privilege.  (Doc. 245, at 3.)

In a prior Order, this Court specifically held that "[c]ommunications from

the individual Relators to government agents or attorneys are not shown to be

within the protection of Rule 26(b)(3)(A)."  (Doc. 154, at 19.)  Defendant contends

that "[d]espite the Court's Order, Relators have continued to withhold certain

communications between Relators and government agents where their own

attorneys are copied or jointly addressed while producing other communications

that appear to have occurred under the same circumstances."  (Doc. 245, at 3-4.)

Defendant also contends that Relators have claimed privilege regarding

"factual discussions between the individual Relators that do not involve counsel or

legal advice."  Finally, Defendant argues that the descriptions in Relators' privilege

log are "inadequate to allow [Defendant] to determine if privilege has been

appropriately asserted for some documents in light of" this Court's previous ruling

on privilege issues.  (Doc. 245, at 2-3.)  Relators respond that the communication

between them is "subject to the attorney-client privilege even though no attorneys

were directly involved" because the communications at issue fall into one of three

categories:  1) the exchange of "facts and information about the case in order to

receive the most effective legal advice," 2) discussion of issues about which they

would seek legal advice, and 3) the forwarding of information received from/sent

to counsel.  (Doc. 269, at 3, 5-6.)

     The Court agrees that these categories of information can, under certain

circumstances, constitute communications protected by the attorney-client

privilege.  Without reviewing the documents at issue, however, the Court cannot

determine whether they are, in fact, privileged.  As such, the Court will **GRANT**

Defendant's request for an *en camera* review of the documents during which the

Court will rule on the discoverability of the same.  The substantive portion of

Defendants' motion is, therefore, **taken under advisement** pending the *en camera*

inspection.  Relevant documents shall be produced to the Court within 21 days of

this Order.

**D.     "Motion for Sanctions" (Doc. 246).**

Defendant Hawker also brings its "Motion for Sanctions" against Relators. (Doc. 246.)  Defendant argues that for 38 days following the granting of its motion to compel on December 19, 2011, Relators failed to "timely respond" to its Second Set of Interrogatories.  (Doc. 247, at 2.)  Defendant contends that, as a result, it was "forced" to engage in depositions without knowing the "basic facts" relating to Relator's conspiracy claim, Relator's contention that Defendants' "quality systems were somehow deficient," and Relator's "argument that individual aircraft are exemplars of other aircraft."  (*Id.*, at 2-3.)  Defendant requests an Order either dismissing the claim for Civil Conspiracy in Relators' Fourth Amended Complaint or precluding Relators from offering any evidence in support of that cause of action.  (*Id.*, at 3.)  Defendant also seeks an Order "barring Relators from arguing that (a) HBC or TECT failed to provide a 'repeatable manufacturing process' or 'rigorous' testing, or (b) any aircraft or part is an exemplar of any other aircraft or part."  (*Id.*)  Finally, Defendant also seeks expenses caused by Relators' alleged failure to obey the Court's previous Order.  (*Id.*)

Relators correctly point out that the Court's December 19, 2011, Order granting Defendant's motion to compel does not include a date by which Relators were to provide the discovery responses at issue.  (Doc. 263, at 1-2.)  Further, Relators state that although Defendant "insisted" that the interrogatory responses be provided on a certain day, Relators promised to submit the answers four days

later (which they then did).  (*Id*.)  Relators continue that "**[r]ather than wait the four business days**, HBC hurriedly filed a motion for sanctions."  (*Id*., at 1 (emphasis in original).)  Under these circumstances, the Court finds sanctions unjustified.  This Court therefore **recommends** that the District Court **DENY** Defendant's motion (Doc. 246).

**E.**     **"Motion for Sanctions Against Relators For Failing to Provide Court-Ordered Discovery" (Doc. 257, sealed)**.

Defendant HBC next moves the Court for sanctions against Relators, arguing that they failed to identify "the specific nonconforming conditions that Relators allege are present on the spar caps installed on the aircraft at issue."  (Doc. 258, sealed, at 10.)  At issue is a spreadsheet prepared by Relator Minge at the direction of counsel after reviewing the "Inspection Record Book – Main Spar Assembly."  (Doc. 291, sealed, at 3.)  In addition to using the spreadsheet to compile and summarize information produced by HBC, counsel for Relators asked Minge "to provide his mental impressions and suggestions for follow up in comments about the records as he reviewed them."  (*Id*.)

Defendant argues that the existence of the spreadsheet establishes, that despite Relators' prior discovery responses to the contrary, Relators

> did, in fact, have the ability to respond to HBC's discovery requests seeking the specific nonconformance facts for at least some of the spar caps at issue as early as April 2011 and that they had compiled those same facts

> with respect to the remainder of the spar caps at issue by
> the time [Relator] Minge completed the spreadsheet in
> the months thereafter.

(*Id*., sealed, at 5.)  According to Defendant, this is in violation of the Court's May

18, 2011, Order, which stated that "[i]f . . . Relators have the specific information

requested, including any knowledge about specific defects in parts in the individual

aircraft identified in the Fourth Amended Complaint (beyond their contention of

general nonconformity), they will supplement their responses to disclose that

information."  (Doc. 154, at 8-9.)  HBC requests that the Court sanction Relators

by precluding them "from identifying any nonconforming conditions on the spar

caps . . . beyond what is currently stated in their interrogatory responses" or, in the

alternative, compel Relators to produce the spreadsheet, supplement their

discovery responses, and submit to additional depositions.  (Doc. 258, sealed, at

10, 11.)

There are two glaring problems with HBC's motion.  First, the document at

issue is textbook work product and, therefore, protected from discovery.

> The work product doctrine, which is embodied in Rule
> 26(b)(3) of the Federal Rules of Civil Procedure, protects
> from discovery documents, things and mental
> impressions of a party or its representative, particularly
> its attorney, developed for or in anticipation of litigation
> or trial.  The asserting party has the burden of
> establishing work product protection.  To carry that
> burden, the proponent must make a 'clear showing' that
> the asserted objection applies.  A 'blanket claim' as to the

> applicability of the work product doctrine does not
> satisfy the burden of proof.  It is well settled that the
> party seeking to invoke work product immunity has the
> burden to establish all elements of the immunity and that
> this burden can be met only by an evidentiary showing
> based on competent evidence.

***Hillsdale Environmental Loss Prevention, Inc. v. U.S. Army Corps of Engineers***,

Case No. 10-2008-CM-DJW, 10-2068-CM-DJW, 2011 WL 1102868, at *8 (D.

Kan. March 23, 2011) (citing ***U.S. Fire Ins. Co. v. Bunge N.Am., Inc.***, 247 F.R.D.

656, 657 (D.Kan.2007)).  The Court is satisfied that Relators have established this

burden.  The spreadsheet at issue was created at the request of counsel and contains

the mental impressions of a party, which are being communicated to counsel.

***Hillsdale***, 2011 WL 1102868, at *8.

Second, other than the mental impressions of Relator Minge (which are

clearly not discoverable), the factual information contained in the spreadsheet was

all gleaned from documents produced by HBC.  As such, HBC has no substantial

need for the information and sanctions are clearly not warranted.  *See **Hickman v.**

***Taylor***, 329 U.S. 495, 511, 67 S.Ct. 385, 91 L.Ed. 451 (stating that "where the

work product contains evidence essential to the preparation of an adversary's case

and not otherwise available, production will be required in some circumstances").

The factual information contained in the spreadsheet is equally available to

Defendant.  Defendants' complaint is, in part, that Relators have failed to disclose

their contentions regarding non-conformity when required to do so in their

discovery responses.  Defendants claim that the spreadsheet is evidence of that

failure.  If so, that failure by the Relators will carry its own sanction because

Relators will not be permitted to prosecute their claims with evidence secreted

during discovery.  It is well-settled that a party is bound by its discovery

representations.  *J. Vangel Elec., Inc. v. Sugar Creek Packing, Co*., No. 11-2112-

EFM, 2012 WL 1476069, at n.3 (D. Kan. April 27, 2012).  The motion is,

therefore, **DENIED**.

**F.**   **"Motion to Quash the Subpoena Issued to Engineering Systems, Inc."
(Doc. 300)**.

The TECT Defendants move the Court to quash Relators' subpoena issued

to Engineering Systems, Inc., which "seek[s] documents from Chuck Morin, a

consulting, non-testifying expert retained on behalf of TECT in connection with

this litigation."  (Doc. 300, at 1.)  TECT argues that, pursuant to Fed.R.Civ.P.

26(b)(4)(D), "a party may not discover facts known or opinions held by an expert

who has been retained by another party in anticipation of litigation and who is not

expected to be called as a witness at trial absent a showing of exceptional

circumstances."[2]  (Doc. 300, at 3.)  TECT also relies on Fed.R.Civ.P. 45(c)(3),

which states that a court "must quash or modify" subpoenas that require

---

[2]  The Court notes that Mr. Morin cannot testify as a witness in this case as it is
uncontroverted that he is now deceased.

"disclosure of privileged or other protected matter, if no exception or waiver applies."  (*Id*.)

Relators respond that the motion should fail because 1) TECT did not object to notice of the subpoena, 2) TECT lacks standing to object to the subpoena, 3) TECT has failed to establish a sufficient nexus between the retention of Morin and the present litigation, 4) Morin was consulted in the regular course of business, 5) TECT did not maintain the confidentiality of Morin or his opinions, and 6) exceptional circumstances exist that require the production of the documents at issue.  (*See generally* Doc. 335, sealed.)  Procedurally, although a party has the option to object to the notice of a subpoena, the Court is aware of no *requirement* that a party do so prior to filing a motion to quash.  *See* Fed.R.Civ.P. 45(c)(3). Thus, the Court's analysis will turn to Relators' substantive arguments.

Most of Relators substantive arguments boil down to their contention that Morin's retention by TECT was not "in anticipation of litigation," but rather for other business purposes.  Relators argue that although Morin was retained almost two months *after* the original Complaint in this case was filed, "the order unsealing the case and directing the Second Amended Complaint be served on TECT by Relators (Doc.16) was not entered until March 31, 2009."  (Doc. 335, sealed, at 4.)

Regardless of when the case was unsealed and when TECT was initially served, the circumstances that existed at the time of Morin's retention indicate to

the Court that TECT was then anticipating litigation.  It is undisputed that TECT

was a party to the prior state court lawsuit that involved many of the same

allegations.  (*See* Doc. 65, at 11.)  Thus, regardless of when TECT was served with

the Second Amended Complaint, it could safely surmise that it was implicated in

the original Complaint even before this case was unsealed.  Further, the Court

agrees that the investigations by multiple federal government agencies provided

TECT with "reasonable grounds for anticipating litigation."  *See **Marten v. Yellow***

***Freight Sys. Inc.**,* No. 96-2013-GTV, 1998 WL 13244, at *11 (D. Kan. Jan. 6,

1998) (holding that a party is "generally justified in believing litigation to be

imminent" upon filing of an EEOC complaint).  This does not, however, make

every document generated thereafter privileged.  "A party claiming work product

immunity must still establish the underlying nexus between the preparation of the

document and the specific litigation."  *Id*., citing ***Burton v. R.J. Reynolds Tobacco***

***Co***., 175 F.R.D. 321 (D. Kan. Aug. 14, 1997).

       The Court finds that TECT has adequately established such a nexus.

Relators contend that the subject line on September 20, 2007, correspondence from

Morin's assistant to counsel for TECT establishes that the purpose of Morin's

retention was for "TECT Corporation Wing Spar Investigation."  (Doc. 335,

sealed, at 4.)  This passing reference to the investigation – which clearly implicates

parts at issue in this lawsuit – by Morin's assistant is not dispositive of the reason

for Morin's retention.  Further, it does not exclude the litigation as the reason for Morin's retention.  The only direct evidence provided to the Court is counsel for TECT retained Morin and his firm for the sole purpose of advising TECT regarding the litigation.  (*See* Doc. 300-1.)

Finally, Relators contend that "exceptional circumstances" exist which entitle them to see the materials at issue because TECT no longer manufactures the spar caps. As such, they argue, their expert "can no longer observe the conditions that were observed by the non-testifying expert," Morin.  (Doc. 335, sealed, at 10.) Even so, the Court agrees with TECT's position that "there is nothing that Mr. Morin observed that is any different than what Relators have observed and discovered through documents and depositions" in this case.  (Doc. 336, at 5-6.) TECT's motion to quash is **GRANTED**.

**G.    "Motion to Compel Interrogatory Responses" (Doc. 320).**

Finally, Defendant HBC moves the Court for an Order compelling Relators to provide supplemental responses to three interrogatories.  (Doc. 320; *see also* memorandum in support, Doc. 332, sealed.)  Each will be discussed in turn.

Interrogatory No. 7 seeks information regarding Relators' False Claims Act "conspiracy" cause of action between HBC and TECT.  (Doc. 332, at 1; *see also* Doc. 332-2, sealed, at 9, *et seq*.)  HBC contends that "Relators answered this request with a 192-page montage of excerpted text apparently copied verbatim

from documents." (Doc. 332, sealed, at 5.) HBC argues that the response "makes no sense," fails to provide the basic information requested (identity of the conspirators, when conspiracy formed, the "illicit agreement" reached by the conspirators, etc.). (*Id.*)

Interrogatory No. 16 seeks the factual basis for the allegation that HBC had knowledge before April 2007 "of TECT's use of alleged non-conforming manufacturing methods" in certain spar caps. (Doc. 332, sealed, at 7.) Relators referred HBC to their response to Interrogatory No. 7, discussed above. HBC contends that "[t]hat answer . . . makes no attempt to identify a single individual or explain how a particular document provides a basis for their allegation about HBC's alleged pre-April 2007 knowledge." (*Id.*) Relators contend that "there is nothing to compel because they submitted responsive information regarding "communications spanning back to 1999 where HBC and TECT discussed nonconforming processes, information about parts that were rejected for conditions attributable to nonconforming processes, incidents that occurred that would have provided HBC with knowledge about TECT's nonconforming processes." (Doc. 327, at 4.)

Having reviewed Relators' responses to Interrogatories No. 7 and 16, the Court finds the responses to be largely sufficient. Although HBC may have preferred additional or different information, this does not necessarily make

Relators' responses improper.  Relators are, however, instructed to provide more

specification as to which portion of the documents produced/referenced are

responsive to the particular interrogatories (and the respective subsections) within

**thirty (30) days** of the date of this Order.  In the context of Defendant HBC's

criticism that the discovery responses do not provide sufficient evidence to support

Relators' claims, the Court notes that absent appropriate grounds for

supplementation, Relators will be bound by the information contained in these

responses.

Interrogatory No. 17 requests information regarding Relator Kiehl's contact

with the Martin Pringle law firm.  It is uncontroverted that Kiehl had been

represented by attorneys at Martin Pringle – a firm which was also known by him

to be outside counsel to HBC.  (*See* Doc. 332, sealed, at 2.)  At his deposition,

Kiehl apparently responded to certain questions regarding what caused him to

believe that HBC "was somehow responsible for any of the manufacturing

processes that [he was] alleging at TECT."  (Doc. 332, sealed, at 9.)  Relator Kiehl

testified that he and Relator Minge "had actually tried to approach, have Martin

Pringle [law firm] approach Hawker Beechcraft and ask if they would like to join

in the suit against TECT because they were doing things improperly."  (*Id*.)  HBC

contends Relators had "no basis for believing that HBC had knowledge of any non-

conforming manufacturing processes at TECT at the time he approached the law

firm – making the date and effect of that approach highly probative as this information goes to the hear of whether Relators are the original source of any such information," which, according to HBC, is "a potential jurisdictional bar under the False Claims Act." (*Id.*)  HBC states that it asked similar questions to Kiehl at his deposition, but that his counsel did not object based on attorney-client privilege until it asked about the specific content of the conversation Kiehl had with the Martin Pringle firm. (*Id.*, at 10.)  According to HBC, Relators are now "impermissibly attempting to expand their objection and avoid revealing any surrounding details about [Kiehl's] approach" of the law firm. (*Id.*)

Relator argues that after he attempted to testify at deposition regarding the date and location of the conversations with counsel, he was instructed not to answer further questions on the subject. (Doc. 327, at 4-5.)  Relators also point out that HBC did not challenge the attorney-client privilege objection during the deposition and time to do so has expired. (*Id.*, at 5-6.)

The Court finds that the content of the conversation at issue is protected by the attorney-client privilege.  This would clearly implicate the portion of the interrogatory inquiring as to "what, if any, role this contact with Martin Pringle had in Relators' decision to name HBC as a defendant in their False Claims Act action." (Doc. 332, sealed, at 8.)  The fact that the conversation took place – in addition to where and when it occurred – is not, however, protected.  This portion

of Defendant HBC's motion is, therefore, **GRANTED in part** and **DENIED in part**.

 

**IT IS THEREFORE ORDERED** that the "Joint Motion for Protective Order" (Doc. 220) filed by Defendants Turbine Engine Components Technologies Corp., TECT Aerospace, Inc., TECT Aerospace Wellington, Inc., and Hawker Beechcraft Corporation is **DENIED**. Defendants shall respond to the requests within **forty-five (45) days** of the date of this Order.

IT IS FURTHER ORDERED that the "Motion to Compel the Production of Documents" (Doc. 244) filed by Defendant Hawker Beechcraft Corporation is **GRANT** to the extent Defendant has requested an *en camera* review of the documents during which the Court will rule on the discoverability of the same. The substantive portion of this motion is **taken under advisement** pending the results of that *en camera* review. Documents shall be produced to the Court for the purposes of such review within 21 days of the date of this Order.

IT IS THEREFORE **RECOMMENDED** that the "Motion for Sanctions" (Doc. 246) filed by Defendant Hawker Beechcraft Corporation be **DENIED**. Pursuant to 28 U.S.C. §636(b)(1), Fed.R.Civ.P. 72, and D.Kan. Rule 72.1.4, Defendants shall have fourteen (14) days after service of a copy of these proposed findings and recommendations to serve and file with the U.S. District Judge

assigned to the case, their written objections to the findings of fact, conclusions of law, or recommendations of the magistrate judge.  A party's failure to file such written, specific objections within the fourteen-day period will bar appellate review of the proposed findings of fact, conclusions of law, and the recommended disposition.

IT IS FURTHER ORDERED that the "Motion for Sanctions Against Relators For Failing to Provide Court-Ordered Discovery" (Doc. 257, sealed) filed by Defendant Hawker Beechcraft Corporation, is **DENIED**.

IT IS FURTHER ORDERED that the "Motion to Quash the Subpoena Issued to Engineering Systems, Inc." (Doc. 300) filed by Defendants Turbine Engine Components Technologies Corp., TECT Aerospace, Inc., TECT Aerospace Wellington, Inc. is **GRANTED**.

IT IS FURTHER ORDERED that the "Motion to Compel Interrogatory Responses" (Doc. 320) filed by Defendant Hawker Beechcraft Corporation is **GRANTED in part** and **DENIED in part**.  To the extent supplemental discovery responses have been ordered, the same are required to be served within **thirty (30) days** of the date of this Order.

**IT IS SO ORDERED.**

Dated this 8th day of May, 2012.

s/ Kenneth G. Gale

Kenneth G. Gale
United States Magistrate Judge